The next case is Stegemann v. United States. Chief Judge Ludenthal, your Honours, good morning. I'm Zachary Siegel and together with Richard Levitt, my left, we represent Mr. Stegemann. In this appeal pursuant to the grant of a Certificate of Appealability from the District Court's denial of his motion to amend 2255. Because of the errors in this case, Mr. Stegemann's guidelines increased from 63 to 78 months to 360 months to life. And so he's serving a 30-year sentence based on a finding that he was a career offender when he's clearly not. The District Court's denial of the amendment, because Mr. Stegemann previously filed amendments, is plainly unfair. Because, one, Mr. Stegemann complied with the Court's and the District's rules of practice in filing these amendments. And of equal importance, the amendments weren't frivolous. We raise two issues here. Whether the District Court erred in declining to reach the merits because it was brought abusively. And whether the Court additionally erred in denying leave to file the amendment because the amendment was futile. Because we explain at length in our papers why the filings were not abusive, namely he was pro se and or the filings had merit. I would like to focus this Court's attention on what we view as the most compelling reason to grant relief. The prior panel's decision denied relief based on a First Circuit case, United States v. Montoya, that we now know from a filing actually the government joined in a post-conviction motion in Montoya, that the Montoya First Circuit decision cited the wrong statute that it said unarguably was a controlled substance offense. Neither the mandate rule nor the law of the case doctrine precluded the District Court or this Court from correcting this error. And as we argue in our reply brief, 28 U.S.C. 2106. Well, instead of like analyzing super closely what the First Circuit said, I mean our court said there was not an effective assistance of counsel for failing to raise the argument that this was not a controlled substance offense, right? Yes, correct. And so didn't that judge – the judgment of our court, didn't that bind the District Court on remand? So I think there's two ways of looking at that, Your Honor. First is whether it was barred by either the mandate rule or the law of the case. We would contend the mandate rule doesn't apply because the mandate rule only applies pursuant to a remand. In this case, there was no remand. So for that reason alone, we say the mandate rule is inapplicable, which would then allow the District Court to consider it. On the other hand, law of the case, it's not an immutable doctrine. Exceptions exist for newly discovered evidence or to correct a clear error to prevent a manifest injustice. So here there was new evidence, at least in the District Court, particularly with the Bain decision. That's not new evidence. That's the decision of a District Court in Massachusetts, right? Yeah, I think – It's not evidence about his case. Right, and I think another one of the exceptions to law of the case is new case law. Admittedly, that case had come down, the Bain District Court case had come down in January of 2022, but to the extent that – Well, this was an ineffective assistance argument that the prior panel was looking at, and it said we could cite – he could cite no authority at the time of his sentencing that his 1999 Massachusetts conviction didn't qualify as a predicate. And that was one reason for saying, so this council's performance in focusing on other things didn't fall outside professional norms. There's – nothing has happened that's changed that, right? Nothing has changed that part of it, but I think on the one hand, and we might disagree with the prior panel, but there was law out there. And I think that was one of the issues we wanted to focus on here again, which is United States v. Savage, which is 542F3. Yeah, but now you're just arguing with the prior panel's decision, right? Right, so I think going then back to Chief Judge Livingston's question, the way the prior panel analyzed it, they said to the contrary, while Stegman's conviction was on direct appeal, the First Circuit expressly held that this statute was unarguably a conviction for a controlled substance offense. And then it said on that basis alone, council's decision to forego such a legal argument cannot be said to fall below prevailing professional norms. So I think what the prior panel was saying was, okay, on the one hand, he didn't point to any law, but in support of that, even if he did, or even if he did, it still wouldn't have mattered because, in our opinion, the First Circuit's decision in Montoya compelled denial on that basis alone. And as we explain— So you're saying there's two reasons. There's the reason that he doesn't have any authority on his side. And then reason two is, in fact, the First Circuit had case law that pointed in the opposite direction. I think it's more of a supporting reason. I think they—I think the way they framed it was they—I don't necessarily want to admit that it was— there were two reasons. I think— I can't imagine. But I think the second—I think there's good reason to believe that, which is because they said on that basis alone. And I think by having made that qualification, the court was indicating that was the primary reason it was denying relief. And now looking at that Montoya decision— Even if the Bain decision were very relevant, even though it's a district court decision that occurs after the period of the assistance of counsel here, even if we put that aside, the Bain decision is about the Armed Career Criminal Act, not about controlled substance offense under the guidelines, right? Right. And the Armed Career Criminal Act doesn't have this language about offense to import controlled substances, right? So it's not obvious that it really is relevant to whether the Massachusetts statute matches the guidelines definition. Well, I'll address that quickly, Your Honor. So the Bain decision, I think what makes it relevant, what makes it important is that the way they analyzed— it was the specific prong of 32EB, which was bringing in, which the court found to be overly broad. And as we explained, ACCA cases and career offender cases are looked at somewhat similarly. And so by focusing in on the bringing in language, that called that into doubt. But more to the point, I think even without— There's nothing in the ACCA that might match the bringing in language, right? Right. So ACCA says manufacturing, distributing, or possessing with intent to manufacture or distribute. That doesn't seem like there's anything that just involves the import of the drug. But the guidelines just say manufacture, import, export, distribution, or dispensing. Right. I think— And so I understand you might have arguments about why maybe we should interpret import not to cover interstate importation or something like that. But before we get to that point, it just is very different from ACCA. So it's not obvious that a district court opinion applying ACCA is going to really change the whole calculus on this question. Well, I think what does change the calculus is the fact that it was— that decision was come to through the same legal analysis, through the same categorical approach, and by looking at the same concept of whether the underlying statute was overly broad. So although they found it overly broad for a different reason, you can still take that overly broad concept and apply it to the career offender amendment, which I think counsel really should have done below. He made a policy argument when he had available to him a perfectly sound legal argument. Well, he made a policy argument for a downward variance, right? Yeah, it was a policy— And he obtained a downward variance, right? Well, I think the reason he obtained a downward variance was because there was a mandatory minimum in the case. And so because the judge was going to impose the mandatory minimum, he discounted the— he didn't grant a variance, in other words, because of the career offender guidelines. Another thing I would like to mention, you know, just harken back to Bain— sorry, to Montoya for a second. Even if this court views that Bain doesn't have as much force, I think at the end of the day, the Montoya decision, the fact that it was wrongly decided, the fact that it miscited the wrong statute, which this court said was— made it unarguably a conviction for a controlled substance offense, the fact that this wasn't realized, the fact that this wasn't caught— admittedly, in a perfect world, we would have caught this by going through the district court decisions and seeing that the Massachusetts Supreme Judicial Court had said, no, this conviction was under 32A—32AB. So having had that problem, I think there's a reason to, at least for this court, to view that there was a manifest injustice if this court relied on that career offender provision in the first place. So— Well, if we're trying to decide whether there's a manifest injustice, it wouldn't just mean that somebody overlooked something we might not have— that might not have been right in the First Circuit opinion. We'd have to conclude that actually the argument is meritorious. And I think this court could conclude that the argument is meritorious. And if I may, I know I'm a little bit over, but if I may answer that question. Well, that's a lot to take on over time, but maybe just briefly give me the— Sure. So the reason we think the argument was meritorious was that, on the one hand, counsel had—counsel had this court's precedent, first of all. That's why he was objectively unreasonable. The bringing in theory was brought in the federal definition. We don't think there's any doubt about that. And to the extent that there was—well, to the extent— there was prejudice, and the reason he was able—he could show prejudice is that the statute, as we said, was overbroad. And so without the Montoya decision precluding it, the only other decision that came out was the Bain decision in 2017, which also concerned 32EB. So if this court, on the one hand, is going to discount Montoya and say, okay, well, we're going to agree that Montoya was wrongly decided— or not wrongly decided, misstated the wrong statute. Then the other decision that came out, which also was— which came out while the direct appeal was still— I think it had not been decided yet, was the Bain decision. And the Bain decision said that under First Circuit precedent, it's more likely than not that 32EB would not be an ACCA offense because it was overly broad, because of this bringing in theory was overly broad. So we think there's a reason in the alternative if this court discounts Montoya to say, all right, well, the next opinion that came out from the First Circuit on this was Bain. And so—and I'd also note, in Bain, they don't cite Montoya, which I think is revealing that perhaps maybe the First Circuit panel— the First Circuit realized that Montoya cited the wrong decision. So— Or maybe they think that the controlled substance offense definition or the guidelines is not the same as the ACCA definition. I think that's—it's a possibility, Your Honor. But I think, you know, there have been cases where this court has— because they apply the exact same approach— because they apply the same categorical approach, and I think in prior cases, this court has said that the analyses are the same. And I think for— Well, the mode of analysis is the same, but what you're comparing, you know, might be very different. I agree with that. But the underlying premise of both of them is whether this bringing in— this way of violating the statute by bringing in a controlled substance is overly broad. And I think we're able to undoubtedly show that under both definitions, this bringing in theory is overly broad because it permits the importation of controlled substances or the bringing in of controlled substances domestically. And we cited a case in our brief at page 28 of our brief, which showed—which held— there was a case where the defendant was bringing pills in from Florida to Massachusetts. So even if they were viewed under different statutes, as I was saying, it's the same principle. It's that same bringing in part of it is just overly broad. It's broader than the federal definition. Now, to the extent the government says in their brief that the Jerome principle that adopted the— that applied the Jerome principle— sorry, applied a federal construction to the United States sentencing guidelines only in 2018 in this court's Townsend decision, we explained in our reply 20 that this court has adhered to the federal construction of the guidelines since 1999. This wasn't a novel argument. This court had for years been applying a federal construction to the guidelines. So if you apply the federal construction to the guidelines, the federal definition of import controls and bringing in based on—just based on Massachusetts precedent can't fall within that. And, you know, the Martinez case that we cited from the Ninth Circuit, that came to the same conclusion. The District of Puerto Rico case came to the same conclusion. Just a final note, you know, on the concept of— the other part of the prejudice prong is divisibility. Now, Mr. Stegman— The Jerome thing is about—is a presumption, right? So we haven't actually said anything about what the word import means necessarily, right? So is it—you think it's foreclosed that one could conclude that what the guideline is referring to is any statute, federal or state, that prohibits the importation of a drug, whether we're talking about importing it from abroad or from another state into the state? Well, I think if you take Townsend and then its prior case Campbell at its word, I think if you're applying a federal construction or applying a federal definition to interpretation of a guideline's term, the federal definition of the term import is unquestionably bringing in from outside of the United States. And so— You're talking about importing something into Massachusetts, right? Yeah, and I think what if you were going to— If the Townsend decision is applying the presumption to the definition of controlled substance, because that's a term of art, but maybe we might conclude that import is not a term of art. Import is a concept, and it could be something that's prohibited by federal law or by state law. I think this—I mean, this Court has never said that, but as I understand— Well, it never said it either way, right? That is an available argument. Well, I think what the Court has said, which was in the Savage decision in 2008, which had to do with the career offender guideline. It had to do with whether the state conspiracy statute can qualify as a career offender violation. This Court said, first in the categorical inquiry, we ask whether the statute of the prior conviction criminalizes conduct that falls exclusively within the federal definition of a predicate offense. So if it's within the federal definition, if you look at the term import, you look at the federal definition of the word import, as cited to, by the way, in parts of that statute of the—yeah, of that federal definition. It'll—in the controlled substance context, undoubtedly, import's always going to be bringing it from outside. I mean, you don't actually do a literal application of the federal law, right? Because if it's a federal law that prohibits the distribution of drugs, it would prohibit the distribution of drugs in Nebraska. But if it's a state law that prohibits the distribution of drugs, it would only prohibit the distribution of drugs in Massachusetts. But we wouldn't say that, therefore, it can't be a categorical match because the conduct is occurring nationally for the federal law and within the state for the state law, right? We talk—we look at the nature of the conduct, not the location of the conduct. So if there's a federal law that prohibits importation, that's importation to the United States. But if it's a state law that prohibits importation, it's importation to the state. Doesn't that look a lot like the match on the notion of distribution? No, I don't think so, Your Honor, because the word import, even if it means— if it means import into the United States, and that's what the federal definition means, then when you— But that's the same word. It just says import. Yeah, but the federal definition— Distribution in the whole United States or distribution in Nebraska versus Massachusetts just says distribution. It just says import also. Well, I think the Ninth Circuit decision in United States versus Martinez is—helps us answer that question because it engaged in the same kind of analysis that Your Honor is asking me. And the Ninth Circuit came to the conclusion that importation—that the definition of that word import is going to take on the federal definition. Well, the Ninth Circuit said a lot of things. Right. I appreciate that. Absolutely. But the District of Puerto Rico came to the same conclusion as well. I don't know if the District of Puerto Rico might say things as well. But in any event, I think, you know, between those two courts, they both came to the same conclusion in how they interpreted the word import, giving it that federal definition meaning. And I think that gave counsel more than enough reason to have made an argument that was plainly available to him. And at the end of the day, you know, I think Mr. Stegman—this airs— he's been in prison right now for 11 years on a 30-year sentence. If his counsel would have raised these arguments, the only thing that would have happened, at the very least, is the government would have been required to produce these Shepard documents. And throughout the government's brief, they complained that Mr. Stegman only produced the indictment cover. Now, what's notable— Mr. Segal, we're over time. Do you want to use your two part of your rebuttal time now, or do you want to conclude? I'll reserve. Thank you. May it please the court. Rajiv Dosan for the United States. The question here is whether the district court abuses discretion by denying a motion to amend a 2255 petition for the sixth time, having allowed five previous amendments. There was no abuse of discretion here for three main reasons. First, this court already considered and rejected the very same ineffective assistance claim that Mr. Stegman now wants to add to his 2255 petition. Also, the defendant here offered no reason why he couldn't have included the bringing in claim in his previous five amendments, despite raising other categorical approach claims. And finally, defense— Well, he did raise it, right? I mean, that was an argument that he had made when it came before us before. Correct. Before— And we said, well, that wouldn't have made any sense for counsel to raise that argument because, look, the First Circuit rejected it. But it turns out the First Circuit actually didn't really reject it if you look closely at it, and courts in the First Circuit take it more seriously than maybe our court assumed. And so why shouldn't we say that actually there's an injustice going on here if we adhere to that as preclusive of this further argument? Well, first of all, as to—in Montoya, it may have had the wrong idea as to whether he was convicted for trafficking under 32A or 32E, but it said in its decision the statute was 32E and presumably looked at that statute. It didn't—it pulled it out of somewhere. And if it—even if it's not the correct statute, its analysis, its holding was still that 32E— Is it the incorrect statute? Do we know that? We don't know that for certain, Your Honor, and we wouldn't concede that necessarily. It's just—I think he has received information from the clerk of the Massachusetts court that says it was 32E. Again, without, I think, further factual development, I'm not sure the government would be in a position to say that that's necessarily correct or that the First Circuit got it wrong. Also, I—you know, when you're talking about this further legal developments, those legal developments were put in front of this court. In—he raised the Bain First Circuit decision. Right, in a motion for rehearing. That was the district court. He raised Bain, I believe, while—and we cite in our appendix, we provide the pages—GA 219 and 232. He's citing the First Circuit decision. And then it goes back to the district court. He cites that in his panel rehearing and rehearing on bank. Right, but there's lots of reasons why the court might not grant rehearing, so I'm not sure that means that it was before. That is correct, Your Honor. But I think if it was such a groundbreaking decision that would affect this decision, I think there's some— Oh, that's fair. Okay. And here, again, as he pointed out, that Bain litigation concerned ACCA and not the career offender guideline. Also, again, the key question here is whether the district court abuses discretion. I think under the abuse of the writ doctrine, it was fully able to say, like, this is enough. We have a decision from the circuit in this case that says that your claim is now—has been rejected. You don't get to now add it again. That just kind of continues the pattern throughout this litigation. We go into some detail of the defendant refusing to accept final decisions by the court. Can I ask on the merits of it? Do you agree that the Jerome presumption means that we should understand the word import in the guidelines to mean import to the United States? Your Honor, I think as to the precise merits of that claim, if it came up de novo, I don't think the government would agree necessarily, because the Jerome presumption, yes, he's correct that this court long ago decided that the guidelines are subject to that presumption. But it depends on the particular language of each provision. In the career guidelines provision, we think has a clear indication, at least when it comes to the conduct that you're talking about. And you mentioned that Townsend concerned the definition of controlled substance offense. And as you point out, that's a term of art. But I think it doesn't necessarily mean the Jerome presumption would apply to all the different other forms of conduct. All right. So the point I was saying is that the word distribution doesn't only refer to distribution in the whole country, because obviously a state law would never prohibit distribution in the whole country, and so it would never be a match. And that would be a weird way to read it. But you could say the same, and so maybe that's how we should interpret import. But you could say the same thing about controlled substance, right? It could be that it shouldn't rely on the federal definition, and it just is referring to any law that controls substances, state or federal. But we have rejected that, so how should we understand the other terms? I think, Your Honor, I would just say that I would fall back on the fact that where we are procedurally, which is whether the defense counsel was ineffective for raising this question. And there could be a lot of strenuous debate about whether Jerome, the federal definition, applies to import. It's a substantial claim. I would just note that six circuits in this country have disagreed with Townsend as far as even whether the Jerome presumption applies here. And members of this court have also disagreed with Townsend and suggested that Townsend was a wrong turn. Now, obviously, that's the rule of the court, and that's the holding. But, again, it concerns a different term in the career offender guideline. But it cannot be the case that defense counsel in 2016 and then its appeal in 2017 was ineffective for anticipating a decision that continues to generate debate and doesn't actually apply to this question. Turning finally to the third reason, again, we've already touched on it, but the merits, I think, here are sufficiently unclear that it would be, I think, a broad expansion of the ineffective assistance of counsel claim to say that counsel in 2016, again, was constitutionally ineffective for failing to have anticipated a ruling in 2018 or rulings that post-dated this litigation that continued to divide the circuits. I just wanted to point out one thing. The Bain First Circuit decision, it was issued after rehearing was denied in this case and after the mandate had issued. So it was very much final when Bain First Circuit came out. I think it was even after appellate counsel were asked to be relieved. Unless there's other questions, we will rely on the arguments in our brief.  Hi. So I'm going to answer, reply to a couple of things that counsel raised. So first, with respect to the abuse of discretion for motion to amend, how Mr. Segment had five prior amendments, I would just add that Mr. Segment complied with the court's rules in each of these in terms of how he filed them. Certificate of appealability was actually granted on these motions. So they obviously had merit. They weren't dilatory. They weren't frivolous. Another thing I would add is Segment found himself in this position in the first place because the government had withheld assets from him in the trial court proceedings, which they inevitably conceded on direct appeal, wrongly withheld, and then only gave the money back after trying to move civilly to hold them. I think after these habeas petition was all the amendments were in, another thing I would want to say is of Mr. Segment's 13 pretrial filings, three of them actually concerned a ceiling delay issue that even the district court agreed with, and that was at Dock 64, and that the government conceded on appeal. So to the extent that he had a lot of filings, these weren't sovereign citizen arguments that he was raising. He was raising meritorious, legitimate arguments, and a lot of the other arguments, frankly, were adopted by counsel, which I think gives another shine to the fact that they weren't frivolous. The counsel also mentioned that the previous five amendments didn't raise Montoya. As I was saying, well, in the first instance, this is irrelevant. That's from counsel's brief, and they cite a case, McCleskey, a Supreme Court case that had to do with successive habeas petitions. A panel of this court had already said that this was not a successive. It was an amendment, and again, he was in this position. He was pro se because he had no money. On the Montoya issue, it said 32a. So this error was discovered. I discovered it on Pacer. It was from a 2255 filing that the government joined, which attached a document from the Massachusetts Judicial Supreme Court listing the conviction as 32a. It's the conviction that they were vacating. So if this court initially trusted the First Circuit's interpretation of Massachusetts law, then surely I think it's entirely fair. I think it makes the most sense. To trust Massachusetts Judicial Supreme Court is going to correctly list the convictions that it's vacating. And in any event— But the conviction that it's vacating doesn't tell us the statute that the First Circuit was looking at when it said that this is unquestionably a controlled substance offense, right? There is a holding that says that this statute, a violation of this statute, is unquestionably a controlled substance offense. Yes, I agree. So in our brief, we addressed that. So it had to do with the 2007 conviction. And the only 2007 conviction listed in any of the filings, there was only one. And so the only 2007 conviction was this 32a one. That was the one that they didn't dispute in the— No, I know. If the First Circuit was focused on this statute instead of that statute, the First Circuit said, well, the statute that we're talking about here is unquestionably a controlled substance offense. Well, I think that— Maybe they should have paid attention to a different statute. But that is what was in the federal reports, right? Yes. And that would be the measure by which you judge counsel's performance. Well, I think—I don't think, first of all, we should judge counsel's performance based on a decision that was issued after the sentencing. But even putting that aside, I think the First Circuit, respectfully, I think they made a mistake. And I think a reason they made a mistake, I think the best evidence of it, aside from the fact that the Massachusetts Judicial Supreme Court cited the only 2007 conviction that everyone referred to as being 32a, the other reason is that 32a had been found by previous First Circuit panels to be unarguably a controlled substance offense. It didn't find the same for 32e. So you're saying the mistake in the Montoya First Circuit opinion is a typo, essentially? Yes, Your Honor. That's what I'm saying. And, you know, we'd be happy to try and look into it some more. But I think a document from PACER, which the government joined, which is from the Massachusetts Judicial Supreme Court vacating someone's conviction, I think the Massachusetts Supreme Court should be entitled to deference that it's not just going to vacate any old— that it's going to correctly cite the convictions that it's vacating. Counsel had also mentioned that prior counsel couldn't have been ineffective for not anticipating a change in law. I just want to point out the irony in that. Considering the last time we were here, the government said the opposite. That subsequent Montoya holding meant that the lawyer was not ineffective. And if I can just leave the court with this, because I can see I'm already over and I've taken up so much of your time already. There's no legal impediment to correcting an obvious injustice to double the defendant's sentence. Our argument of support of relief is meritorious, and we ask the court correct this injustice. Thank you very much. Thank you both, and we will take the matter under advisement. Thank you.